## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MAYA DANGELAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:22-cv-3419** |
| **QUOC LINH TRADING SERVICE** | § | |
| **CONSTRUCTION COMPANY** | § | |
| **LIMITED; TRAN, QUANG QUOC;** | § | |
| **AND HUYNH, THI CAM LINH,** | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

The United States Court is still considered as a Haven for Justice due to its fairness and integrity. To quote former United States President Theodore Roosevelt:

> "No man is above the law and no man is below it; nor do we ask any man's permission when we ask him to obey it. Obedience to the law is demanded as a right, not asked as a favor."

## INTRODUCTION

1.      This action is brought by Dr. Maya Dangelas,[1] an American national,[2] against three alien Defendants.  Dr. Dangelas, is a reputable American educator,[3]

---

[1] Maya Dangelas, Ed.D (A/K/A Dang, Thi Hoang Yen). *See* https://en.wikipedia.org/wiki/Dang_Thi_Hoang_Yen.

[2] (Interchangeably "Plaintiff" or "Dr. Dangelas")

[3] Strongly believing that education is the key for the development and growth for the future generations, Dr. Dangelas founded and has served as Provost and Chairwoman of Tan Tao University ("TTU") since its inception. TTU, with the assistance of the then Provost of Rice University, Dr. Stephen Malcolm Gillis, uses curricula designed by Rice University in the United States. Also, using the model of Duke University in the U.S., TTU aspires to become the first Vietnamese university based on the U.S. model of education. Programs at TTU are taught in

economist, entrepreneur, businesswoman, and philanthropist who founded Tan Tao Group.[4] Her companies have provided jobs for hundreds of thousands of people and have awarded thousands of scholarships per years for American and Vietnamese students.

2.     Tan Tao Investment and Industry Corporation  (interchangeably "Tan Tao" or "ITACO")[5] is one of the subsidiaries of  Dr. Dangelas' Tan Tao Group.  It has pioneered the concept of industrial parks in Vietnam to bring foreign investment to Vietnam, and  Dr. Dangelas is the operating mind of ITACO.

3.     Although ITACO was organized in Vietnam, *it is an American Company*, as defined by the 2001 Bilateral Trade Agreement ("BTA") between the United States and the Socialist Republic of Vietnam ("Vietnam"). (*See* Exhibit 9, *infra.*)[6] The reason is that it is owned, controlled, and operated by Dr. Dangelas, an American national.  For years, the company has been one of the largest publicly traded companies in Vietnam, and its stocks are owned by American Citizens and American Companies. The stocks'

---

English, and all TTU students are required to take liberal arts courses which account for 25% of their academic programs. *See*
https://ttu.edu.vn/about/president-office/?lang=en# ; and
https://en.wikipedia.org/wiki/T%C3%A2n_T%E1%BA%A1o_University .

[4] *See* https://en.wikipedia.org/wiki/Tan_Tao_Group .

[5] ITACO is not a party of this federal lawsuit. It has brought claims directly against the Socialist Republic of Vietnam ("Vietnam") in an International Arbitration in Europe.

[6] While ITACO is constituted pursuant to Vietnamese law, it is a company of the United States for the purposes of the 2001 Bilateral Trade Agreement ("BTA") between the U.S. and Vietnam.

Article 4(8) of the BTA provides that *"a company of a Party that, immediately before the occurrence of the event or events giving rise to the investment dispute, was a covered investment, shall be treated as a company of the other Party."*

Article 1(1)(A) of the BTA in turn defines a covered investment in relevant party as a *"company or enterprise" "owned or controlled directly or indirectly by nationals or companies of the other Party."*

ITACO is a company of the United States for the purposes of the BTA, because it is owned and controlled by Dr. Dangelas and the U.S. Companies.

fair market value was approximately $2,000,000,000.00, before May 30, 2022, when Defendants aided and abetted *Ho Chi Minh Stock Exchange* in pushing ITACO into the forced disclosure of the opening of bankruptcy proceedings for a debt that it did not owe. This conspiracy and illegal acts constituted the "taking" of Dr. Dangelas' rights to property in violation of the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution, 22 U.S.C. § 2370 (e) (2), and the principles of international law and U.S. treaties (*e.g.,* the 2001 BTA between the U.S. and Vietnam).

4.     Via Dr. Dangelas, ITACO constructs and operates industrial parks throughout the country of Vietnam. Those industrial parks provide foreign investors a "one door service."  Through ITACO, foreign investors obtain the facilities, material, and labor that they need to operate in Vietnam without being forced to wait through years of administrative steps otherwise required for a foreign investor to set up a presence in Vietnam.



Tan Tao Industrial Park changed the Binh Chanh economy.



Photo of Tan Tao University Construction Site.



Photo of Tan Tao University's dedicated hospital, home to Tan Tao University
Medical School and research projects.

## JURISDICTION

5.      Plaintiff is bringing claims under federal statutes, thus invoking 28 U.S.C. §

1331.

6.      Plaintiff is also bringing claims under 28 U.S.C. § 1332 (a) (2).

> 28 U.S.C. § 1332 - Diversity of citizenship; amount in controversy; costs:
>
> (a) ***The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –***
> (1)  citizens of different States;
> (2)  ***citizens of a State and citizens or subjects of a foreign state,*** except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State. . . .
>
> * * * * *
>
> (c)  For the purposes of this section and section 1441 of this title--
>
> (1)  a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . . .

28 U.S.C. § 1332 (a) (2). (Emphasis added.)

7.      The matter in controversy in this action exceeds the sum or value of

$75,000.00. Plaintiff is bringing this case, seeking punitive damages against these

Defendants in the amount in excess of $300,000,000.00.

8.      As stated above, Plaintiff is an U.S. national and a citizen of the State of

Texas. Specifically, Defendant Quoc Linh Trading Service Construction Company

Limited ("Quoc Linh Company" or "Quoc Linh") (an Alien) is a citizen of Vietnam, a

foreign state, because it was incorporated under the law of Vietnam, and its principal place of business is in Vietnam (115 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam) and its owners/shareholders are Vietnamese nationals. Defendant Tran, Quang Quoc (CEO of Quoc Linh Company) (an Alien) is a subject of Vietnam. He resides at 479 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam. Defendant Huynh, Thi Cam Linh (co-owner of Quoc Linh Company) (an Alien) is a subject of Vietnam. She resides at 479 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam.

## **VENUE**

9.      Pursuant to 28 U.S.C. § 1391 (c) (3), all three Defendants are nonresidents of the U.S., and these nonresidents from a foreign country (aliens) can be sued in any district.

## **PERSONAL JURSIDICTION**

10.     This Court has personal jurisdiction under long-arm jurisdiction pursuant to Fed. R. Civ. P. 4 (k)(2) of the Federal Rules of Civil Procedure.

> Under Rule 4(k)(2), the plaintiff must prove: (1) the claim at issue arises from federal law; (2) the defendant is not subject to any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and law. The plaintiff has the burden to show the first two prongs, and the burden then shifts to the defendant to show that application of jurisdiction would be unreasonable.[7]

---

[7] Fed. R. Civ. P. 4(k)(2) states: (2) Federal Claim Outside State-Court jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

*See Lang Van, Inc. v. VNG Corporation,* No. 19 – 56452 (9th Cir. 2022) for an in-depth analysis of personal jurisdiction under long-arm jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).

11.     (1) The claim at issue arises from federal law: the Fifth Amendment and the Fourteen Amendment to the U.S. Constitution; 22 U.S.C. § 2370 (e) (2); (2) Defendants are not subject to any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution, law, and the 2001 BTA of the U.S. and Vietnam.

## **PARTIES**

12.     Plaintiff Dr. Maya Dangelas is a U.S. national.

13.     Defendant Quoc Linh Trading Service Construction Company Limited is a Vietnamese company organized under the law of Vietnam. It can be served with process at its principal office at 115 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam.

14.     Defendant Tran, Quang Quoc, is a Vietnamese subject and CEO and Co-owner of Quoc Linh Company.  He can be served with process at his business office at 115 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam; or he may be served at his home at 479 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam.

15.     Defendant Huynh, Thi Cam Linh, is a Vietnamese subject and Co-owner of Quoc Linh Company.  She can also be served at her business office at 115 Binh Tien 2

Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam; or she may be served at her home at 479 Binh Tien 2 Hamlet, Duc Hoa Ha Ward, Tan An, Long An, Vietnam.

<strong><u>RELEVANT FACTS</u></strong>

**A.**  **Let us begin with the Story of ITACO: an American-Vietnamese Success Story.**

16.    As stated, *supra,* ITACO *is an American Company*.[8] Under the leadership of Dr. Dangelas, constructs and operates industrial parks throughout the country. Those industrial parks provide foreign investors a "one door service."  Through ITACO, foreign investors obtain the facilities, material, and labor that they need to operate in Vietnam without being forced to wait through years of administrative steps otherwise required for a foreign investor to set up a presence in Vietnam.  ITACO's industrial parks offer jobs to hundreds of thousands of underserved citizens and improve their lives in other ways – namely by transforming the landscape and offering utilities (schools, hospitals, waste-treatment plants, and other facilities) that Vietnam's corruption-ridden bureaucracy does not provide.

17.    Defendant Quoc Linh Company is owned by Defendant Huynh, Thi Cam Linh whose father is the Secretary General of the Long An Communist Party.  Quoc Linh Company is a limited liability company which is owned and controlled by both Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh.  Recently, Quoc Linh Company and both Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh (daughter of the Chairman of Long An Province) have aided and abetted Ho Chi

---

[8] As defined by the 2001 BTA between the United States and Vietnam.

Minh Stock Exchange, an instrumentality of Vietnam in liquidating ITACO – a U.S. multi-billion company – on the basis of an alleged small contractual debt (with fraudulent documentation) amounting to less than USD 1 million. That alleged debt results from a contract between one of Quoc Linh's contractors, VietNam Urban Development Company, hereinafter referred to as "VietNam Land," and Quoc Linh Company. ITACO was not a party to that contract. However, it has been unreasonably and unjustly found liable for a debt arising out of that contract on the basis of false and corrupt evidence.

**B.     ITACO was not a party to the contract with Defendant Quoc Linh Company.**

18.    The saga of Plaintiff's company, ITACO, began with a contract which Vietnam Urban Development Company ("VietNam Land") and Quoc Linh Company signed to pump sand for leveling at Tan Duc Industrial Park. As stated, ITACO had absolutely nothing to do with that contract. Originally, Quoc Linh Company sued VietNam Land for the alleged nonpayment. In fact, VietNam Land already paid Quoc Linh a total of 39,165,349,475 VND.

**C.     Forged documents and irregularities of the Vietnamese Courts.**

19.    **On September 20, 2014**, Quoc Linh Company, via Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh, filed an additional lawsuit, with the following contents:

> 1) Requesting ITACO to pay Quoc Linh Company an amount of 14,182,981,200 VND, because ITACO benefits from the sand provided by Quoc Linh Company.
>
> 2) If ITACO does not make the payment, it is proposed to the Court to cancel the Sand Sale Contract No. 3012A/HDKT-VNLAND-09

dated December 30, 2009, so that Quoc Linh Company can recover the unpaid sand.

20.     During the trial, ITACO made the following requests to Quoc Linh Company:

1)  To clearly identify the location where the leveling has been carried out so that ITACO can test the leveling sand sample at this location and compare it with the land mine that Quoc Linh Company has declared that they bought to perform the leveling contract. However, all 3 times at the scene in the presence of Supervision Consulting Company, ITACO, VietNam Land, and security personnel supervising the leveling work, Quoc Linh Company and Defendants Tran, Quang Quoc and Huynh, Thi Cam Linh failed to indicate the location of the sand pump for which they are suing for debt collection. However, during the trial, ITACO suddenly received a report from Quoc Linh and a self-signed court judge confirming that Quoc Linh Company has leveled sand for the Tan Duc area. Based on this forged document, the Court issued an unreasonable and illegal judgment;

2)  ITACO requested Quoc Linh Company, Defendants Tran, Quang Quoc, and Huynh, Thi Cam Linh to present their tax reports for the years of 2010 and 2011, to prove the sources for purchasing sand, renting barges to transport from the land mine to the Tan Duc area, and revenue from Tan Duc. However, the Court rejected this legitimate request of ITACO in an unusual way;

3)  The dates of all Quoc Linh Company sand leveling receipts submitted to the Court were modified, and the beneficiary was Mr. Huynh Mot, the father-in-law of the Director of Quoc Linh Company. Mr. Huynh Mot is also a VietNam Land's contractor who was paid in the previous years;

4)  The debt records only have forged signatures and no seals, as required by the Company's regulations on acceptance and payment records, including Southern Engineering & Informatics - Investment

Corporation (S.E.I), the Investor, VietNam Land, and Quoc Linh Company.[9]

**D.     The First Instance Judgment.**

21.     Based on all the above forgeries, irregularities and political motives urged by Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh, on **January 16, 2017**, the People's Court of Duc Hoa District issued the first-instance judgment No. 01/2007/KDTM-ST. The main content of the judgment is as follows:

1) Forcing ITACO to be jointly responsible with VietNam Land for paying Quoc Linh Company the principal amount of 14,313,752,821 VND, and interest amount of 7,113,935,151 VND, for a total amount of 21,427,687,000 VND.

2) The reason for forcing ITACO to be jointly responsible with VietNam Land was the Court refused to recognize the Payment Order that ITACO had transferred money through the bank to pay VietNam Land. The reason for the Court's rejection was that the payment order did not specify which contract was paid for, although ITACO only had one leveling contract with VietNam Land at that time in 2010.

22.     Strangely, Quoc Linh Company did not ask for judgment enforcement according to the Law on Civil Judgment Execution, but requested to open bankruptcy proceedings in order to force ITACO to pay Quoc Linh Company in accordance with the Court's judgment in 2017 with the total amount of 21,427,687,000 VND (of which, the

---

[9] On September 2014, Quoc Linh Company sued ITACO, an American company as defined under the 2001 BTA. As such, Quoc Linh at a national level injected itself into the national general jurisdiction in the U.S. by aiding and abetting in expropriating, and thus giving effects to the principles of international law in a case in which *other rights to property* is asserted by Plaintiff, based upon *other taking* by an act of an instrumentality in violation of the principles of international law.

amount of principal debt is 14,313,752,821 VND, and the amount of interest is 7,113,935,151 VND).[10]

**E.     The Appellate Decision.**

23.     On **January 20, 2017, ITACO filed an appeal**.

24.     On **May 5, 2017**, the People's Court of Long An province issued the Appellate Decision No. 07/2017/KDTM-PT. The main content of the judgment was forcing VietNam Land to cooperate with ITACO to pay Quoc Linh Company the amount of principal and its interest arising from the Contract signed on December 30, 2009, for a total of 21,338,086,984 VND.

25.     On **June 20, 2017**, ITACO submitted an application to the High People's Court in Ho Chi Minh City to consider the case according to cassation procedures.

26.     On August 3, 2018, the High People's Court in Ho Chi Minh City issued Decision No. 84/2018/KN-KDTM to appeal the cassation.

**F.     The Decision of the High People's Court in Ho Chi Minh City.**

27.     **On July 4, 2019**, the Court of Cassation sided with ITACO and quashed the First Duc Hoa Decision (the "Cassation Decision"). [11]   The Cassation judges explained that Quoc Linh had no contractual privity with ITACO and thus could not seek to hold ITACO responsible for the debts of its contractual counterparty, VietNam Land.[12]

---

[10] Which the Court reheard in 2021 with the total amount of 27,720,642,618 VND (of which, the amount of principal debt is 14,182,984,200 VND, and the amount of interest is 13,537,658,418 VND).

[11] *See* a true and correct copy of the Decision of the Court of Cassation dated July 4, 2019, which is incorporated into this Complaint and attached hereto as Exhibit 1.

[12] *See* a true and correct copy of the Hearing Transcript of the Court of Cassation dated July 4, 2019, which is incorporated into this Complaint and attached hereto as Exhibit 2.

The courts also decided to suspend enforcement of the First Duc Hoa Decision and remand the matter to the lower court.[13]

28.     Specifically, on July 4, 2019, the High People's Court in Ho Chi Minh City issued the cassation Decision No. 14/2019/KDTM-GDT, with the main contents as follows:

1)  Cancelling all the No. 02 judgments of the first-instance No. 01/2007/KDTM-ST and the Appellate No. 07/2017/KDTM-PT; and bringing the case back to trial from the first instance level.

2)  The cassation decision of the High People's Court in Ho Chi Minh City stated the fact: **that the first instance and appellate courts, forcing ITACO to be jointly responsible with VietNam Land for paying Quoc Linh Company, was not legally grounded.**

**G.     The case was sent back to the People's Court of Duc Hoa District.**

29.     After the High People's Court in Ho Chi Minh City decided to return the case for re-trial from the first instance level, the People's Court of Duc Hoa District heard and pronounced the first-instance judgment No. 07/2020/KDTM-ST on **September 18, 2020**. The main content of the judgment still remained the same as the first-instance judgment No. 01/2007/KDTM-ST dated January 16, 2017.  Accordingly, the People's Court of Duc Hoa District still issued a decision contrary to the cassation decision of the High People's Court in Ho Chi Minh City, based on the argument that ITACO must jointly pay the debt to Quoc Linh Company for the principal and interest amount of

---

[13] *See* a true and correct copy of the Decision of the Head of the Civil Judgment enforcement agency dated August 12, 2019, which is incorporated into this Complaint and attached hereto as Exhibit 3.

27,720,642,618 VND, because the runaway CEO of VietNam Land was the ex-husband of the Chairwoman of Tan Tao Company, so the Company must be responsible.[14]

30.     On **January 5, 2021**, the People's Court of Long An province issued the appellate judgment No. 01/2022/KDTM-PT. The content of the judgment remained the same as the first-instance judgment No. 07/2020/KDTM-ST dated September 18, 2020 of the People's Court of Duc Hoa District.

## H.     ITACO's Repetition of the Application for Cassation Procedures.

31.     On February 2, 2021, ITACO submitted an application to the High People's Court of Ho Chi Minh City to consider the judgment according to cassation procedures. On **January 28, 2022**, ITACO issued Document No. 117/CV-PLITACO-22 to the High People's Court of Ho Chi Minh City: Repetition of the application for cassation review. Up to now, the High People's Court in Ho Chi Minh City had <u>NOT</u> yet provided a written reply on whether to protest at cassation or not.  Justice delayed is justice denied.  In the meantime, the opening of the bankruptcy proceedings is still ongoing.

## I.     The Decision to open the bankruptcy proceedings caused Plaintiff's substantial losses.

32.     Based on fraudulent evidence and the urging and politically pressure by Defendant Quoc Linh Company, Defendant Tran, Quang Quoc, and Defendant Huynh, Thi Cam Linh, on **January 25, 2018**, the People's Court of Ho Chi Minh City issued an ex parte decision (without ITACO's participation) to open the bankruptcy proceedings

---

[14] This is a ridiculous holding and was against logic, contract law, and family law in Vietnam, as well as that of the U.S.

against ITACO, purporting to act on the clearly fraudulent evidence that Quoc Linh Company had submitted on the record.[15]  The court falsely found that there was sufficient evidence "to prove that Tan Tao Investment and Industry Corporation [ITACO] is insolvent."  (ITACO  was not insolvent then, and it certainly is not now.)

33.     Again, the Decision to open the bankruptcy proceedings was based on a January 16, 2017, decision of the Duc Hoa People's District Court, which arose out of a dispute between one of ITACO's contractors, VietNam Land, and VietNam Land's subcontractor, Quoc Linh.  Again, ITACO was not a party to that contract.[16]

34.     The First Duc Hoa Decision found ITACO liable for VietNam Land's purported debts to Quoc Linh of approximately USD 1 million.  Defying logic, the decision "reasoned" that ITACO had been "unjustly enriched" by Quoc Linh's works and therefore must compensate Quoc Linh for the work.[17]

35.     During the course of the litigation, the Vietnamese Government took the unusual step of openly advocating in favor of Defendant Quoc Linh Company, Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh against ITACO before the court. It is likely that the Government used other means of influence to ensure its desired decision, which was clearly flawed.  Of critical importance is the First Duc Hoa Decision

---

[15] *See a* true and correct copy of the Decision of the People's Court of Ho Chi Minh City dated January 25, 2018, which is incorporated into this Complaint and attached hereto as Exhibit 4.

[16] While VietNam Land was, at one point in time, operated by Dr. Dangelas' estranged ex-husband, Mr. Jimmy Tran, VietNam Land and ITACO were, and still are, unrelated companies.  Quoc Linh claimed that VietNam Land owed Quoc Linh for sand filling that was done and never paid for.  Quoc Linh claimed that ITACO should pay because it had "benefitted" from that work.  However, as stated above, *VietNam Land already paid Quoc Linh a total of 39,165,349,475 VND.*

[17] *See* a true and correct copy of the Decision of the Court of Appeal of Long An dated May 5, 2017, which is incorporated into this Complaint and attached hereto as Exhibit 5.

was not final and still subject to appeal before Vietnam's higher courts. Moreover, as ITACO explained in a letter dated June 5, 2018 to Vietnamese authorities, ITACO's financial statements (which were audited by E&Y) showed that its assets totaled approximately VND 13,000 billion (or nearly USD 600 million) while its liabilities totaled approximately VND 2.5 billion (or approximately USD 100 million) resulting in an actual book value of over USD 500 million. The market value is likely over four times USD 500 million, which is approximately USD 2 billion**.**[18]

36.     ITACO only learned on March 30, 2018, of the Decision to open the bankruptcy proceedings No. 56/2018/QD-MTTPS dated January 25, 2018, [19] but immediately informed Vietnamese authorities that the basis of the First Duc Hoa Decision was bogus; that ITACO was solvent; and the bogus Decision has been appealed. [20]   In reality, ITACO explained, the Decision to open the bankruptcy proceedings was little more than an "act of taking of the property of ITACO and Dr. Dangelas in the market" – highlighting the significant damage that would arise from Vietnam's actions.

---

[18] *See* a true and correct copy of a Letter from ITACO to Vietnamese Authorities dated June 5, 2018, which is incorporated into this Complaint and attached hereto as Exhibit 6.

[19] *See* a true and correct copy of a Letter from ITACO to Vietnamese Authorities dated April 3, 2018, which is incorporated into this Complaint and attached hereto as Exhibit 7.

[20] *Id.; see* the Letter from ITACO to Vietnamese Authorities dated June 5, 2018, Exhibit 6.

37.     In parallel, ITACO continues to challenge the First Duc Hoa Decision before the Long An Court of Appeal[21] and then Vietnam's highest court, the Court of Cassation.

**J.     Finally, on May 30, 2022, ITACO was forced by the Ho Chi Minh Stock Exchange into disclosure of information about the lower Court's Decision to open the bankruptcy proceedings.  This action resulted in substantial loss of stock value. ITACO replied:**

> *To:* **Ho Chi Minh Stock Exchange**

> The disclosure of information about the Court's decision to open bankruptcy proceedings No. 56/2018/QD-MTTPS dated January 25, 2018 of the People's Court of Ho Chi Minh City has been reported to the Stock Exchange by Tan Tao Company in the following official documents, namely Official Dispatch No. 205/CV-ITACO-22 dated May 30, 2022, Official Dispatch No. 216/CV-ITACO22 dated June 5, 2022;, and Official Dispatch No. 249/CV-ITACO-22 dated July 5, 2022; Tan Tao Corporation would like to reiterate the reported contents as follows:

> Decision on opening the bankruptcy proceedings No. 56/2018/QD-MTTPS dated January 25, 2018 by the Ho Chi Minh City People's Court, based on the request to open bankruptcy proceedings by Quoc Linh Service and Construction Trading Company Limited (hereinafter referred to as Quoc Linh Company). The request to open bankruptcy proceedings by Quoc Linh Company is unreasonable because this request is based on the first-instance judgments of the People's Court of Duc Hoa District (Long An) and the Appellate Court of the Long An Provincial People's Court. However, these two judgments render many violations, as the case files demonstrated many forged documents. Tan Tao Corporation absolutely has neither business relationship nor dispute with Quoc Linh Company. Court Cassation Decision No. 14/2019/KDTM-GDT dated July 4, 2019 of the High People's Court in Ho Chi Minh City clearly stated: *"That the First-Instance Court and the Appellate Court held that Tan Tao Corporation was the project investor that was the beneficiary of the sand volume of Quoc Linh Company, and Tan Tao Corporation could not prove that it had paid enough money to Vietnam Land Company, so Tan Tao Corporation was forced to*

---

[21] *See* the Decision of the Court of Appeal of Long An dated May 5, 2017, Exhibit 5.

*cooperate with Vietnam Land Company to pay the above amount and its interest to Quoc Linh Company has no legal basis".*

The request to open bankruptcy proceedings by Quoc Linh Company also showed the conspiracy of interest groups who wanted to sabotage Tan Tao Corporation in particular, and Tan Tao Group in general. Tan Tao Corporation is not bankrupt, as Tan Tao Corporation has a chartered capital of VND 9,384 billion, and its asset value of 13,237 billion VND, while the debt of Quoc Linh Company (assuming it is legal) is VND 21.4 billion, which only accounts for 0.02% of the total value of the Corporation's assets. It, therefore, cannot make Tan Tao Company go bankrupt. However, Quoc Linh Company did not ask the Civil Judgment Enforcement Agency to settle the case, but acted in the direction of requesting the Court to open bankruptcy proceedings for Tan Tao Company. This shows a cunning trick of Quoc Linh Company to collude with corrupt forces to sabotage and plot to bankrupt Tan Tao Corporation.

The Annual General Meeting of Shareholders of Tan Tao Corporation in April 2022 decided to authorize the representative of the Corporation to initiate a lawsuit against the dispute over the sale and purchase contract to the International Court.

Tan Tao Corporation is filing a petition for help when being forced into bankruptcy, and the petition has been sent to the General Secretary, the President, the Prime Minister, the Chairman of the National Assembly. At present, the leaders of the Party and State have directed the settlement for the petition for help from Tan Tao Corporation.

For the above reason, Tan Tao Company has not announced information about the Decision to open bankruptcy proceedings No. 56/2018/QDMTTPS dated January 25, 2018 of the Ho Chi Minh City People's Court to avoid damage to the Corporation's shareholders and investors. Tan Tao Corporation requests the Ho Chi Minh City Stock Exchange to temporarily suspend information disclosure until there are conclusions of competent authorities.

In case the Stock Exchange forces Tan Tao Corporation to disclose information, the disclosure content will be all of the above content. The Stock Exchange then will be responsible for all damages to Tan Tao Corporation, shareholders, domestic and foreign investors according to the judgment of the International

Court that Tan Tao Corporation will sue because of being forced to disclose information.[22]

(Emphasis added.)

38.     Plaintiff has been waiting for a decision of the High People's Court of Ho Chi Minh City. But recently, the action of Ho Chi Minh Stock Exchange, urged by Quoc Linh Company, forced ITACO to disclose publicly the Decision to open the bankruptcy proceedings, thereby resulting in a substantial loss of the value of Plaintiff's stocks, in the amount of approximately $28,497,074.00 directly, and $82,406,844.00 indirectly. Defendants aided and abetted Vietnam's organs and instrumentalities, *e.g.,* its Courts, the Security Exchange Committee, and the Ho Chi Minh Stock Exchange in expropriating the property of Plaintiff, an American national.

## CAUSES OF ACTION

**A.     Federal Causes of Action.**

**1.     Violation of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution.**

39.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if copied herein.

40.     Defendants aided and abetted Ho Chi Minh Stock Exchange in expropriating and/or taking the property and/or rights to property of a U.S. national, Dr. Maya Dangelas, and a U.S. Company, ITACO.  Plaintiff seeks compensatory and all

---

[22] *See* a true and correct copy of the Letter No. 294/CV-ITACO-22, on Responding to Official Dispatch No. 1222/SGDCKHCM-NY of HOSE, dated August 20, 2022, which is incorporated into this Complaint and attached hereto as Exhibit 8.

damages allowed under the implied right to a civil remedy afforded by the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution.

**2.    Defendants aided and abetted Ho Chi Minh Stock Exchange, an instrumentality of Vietnam, in expropriating and thus giving effects to the principles of international law in a case in which *other rights to property* is asserted by Plaintiff, based upon *other taking* by an act of an instrumentality in violation of the principles of international law, directly and/or indirectly in violation of 22 U.S.C. § 2370 (e)  (2) (as amended in 1964).**[23]**

**3.    Defendants' conduct is in violation of international laws and treaties, and caused Plaintiff damage. Defendants violated and/or aided and abetted Ho Chi Minh Stock Exchange in violation of the BTA between the United States and the Socialist Republic of Vietnam on Trade Relations.[24]**

**B.    <u>Supplemental Claims under Texas Law</u>.**

**Continuous Negligent Misrepresentation**

41.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if copied herein.

---

**[23]** 22 U.S. Code § 2370 (e) (2)

(e) NATIONALIZATION, EXPROPRIATION OR SEIZURE OF PROPERTY OF UNITED STATES CITIZENS . . . Notwithstanding any other provision of law, <u>no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which</u> a claim of title or <u>other rights to property is asserted by any party including a foreign state</u> (or a party claiming through such state<u>) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law</u>, including the principles of compensation and the other standards set out in this subsection: Provided, That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a suggestion to this effect is filed on his behalf in that case with the court.

[24] *See* a true and correct copy of the Bilateral Trade Agreement between the United States and the Socialist Republic of Vietnam on Trade Relations, which is incorporated into this Complaint and attached hereto as Exhibit 9.

42.     To prevail on a negligent misrepresentation claim, a plaintiff must show (1) the representation in question was made by the defendant in the course of its business or in a transaction in which it had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n of Tyler v. Shane,* 825 S.W.2d 439, 442 (Tex. 1991); see also *Roof Sys., Inc. v. Johns Manville Corp.,* 130 S.W.3d 430, 439 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ("The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact. . . .")

43.     Defendant Quoc Linh Company, via Defendant Tran, Quang Quoc and Defendant Huynh, Thi Cam Linh, made numerous misrepresentations regarding the transaction between Quoc Linh and VietNam Land and thus caused damages to Plaintiff. The representation in question was made by Defendants in the course of their business and in a transaction in which they had a pecuniary interest, (2) Defendants supplied false information for the guidance of others in their business, (3) Defendants did not exercise reasonable care or competence in obtaining or communicating the information, and (4) Plaintiff suffered pecuniary loss by justifiably relying on the representation.

**C.      Interference with Business Relations.**

44.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if copied herein.

45.     Plaintiff, an investor in ITACO, suffered harm in that her stocks sustained substantial losses in value, directly and indirectly.

**The Elements of Tortious Interference with Business Relations**

46.     To prevail on a claim for tortious interference with prospective business relations, a plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.   In the instant case, Defendant Quoc Linh Company, via Defendant Tran, Quang Quoc, and Defendant Huynh, Thi Cam Linh, have willfully interfered with the business relationship of Plaintiff and others; and the interference resulted in damages suffered by Plaintiff. But for the conduct of Quoc Linh Company, Plaintiff could have sold her stocks and would not have suffered the loss.

**Reasonable Probability of Prospective Business Relations**

47.     For her claim of tortious interference with prospective business relations, Plaintiff will prove that the Defendants interfered with a reasonably probable contract that would have been entered into but for the interference, because without a probable contract, there is no "interest" to tortiously interfere with.   To establish a claim for tortious interference in this case, Plaintiff will prove that more than mere negotiations occurred, but she does not have to prove that the contract would have "certainly be made

but for the interference." Thus, as addressed in more detail below, Plaintiff will establish that Defendants committed an independent tort but must also prove that Defendants' conduct actually interfered with a reasonably probable contract.

### Willful and Intentional Act of Interference

48.     To satisfy the second element, Plaintiff will prove that Defendants either desired to prevent the relationship from occurring or knew the interference was "certain or substantially certain to occur as a result of the conduct." The Supreme Court of Texas has explained that interference is intentional " 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a   result.' "

### Defendants' Conduct Was Independently Tortious or Unlawful

49.     In this case, Plaintiff will prove that Defendants' conduct was independently tortious or unlawful, but need not prove all the elements of the independent tort itself. Plaintiff needs only to prove that Defendants' conduct would be actionable under a recognized tort. The Texas Supreme Court has held to the Restatement's limitation of unlawful conduct "characterized by violence, fraud or defamation, and was tortious in character" as it preserves the tort's utility and fills a gap in affording compensation in situations where a wrong has been done. Thus, torts such as fraud, assault, illegal boycotts, misrepresentation, misappropriation of trade secrets, violation of a non-compete agreement, are all examples of independently tortious or unlawful conduct that would support a tortious interference claim. Conduct that is "merely sharp or unfair," however, cannot be the basis for an action for tortious interference with prospective relations.

**Proximately Caused Injury**

50.     Just as with tortious interference with an existing contract, in the instant case, Plaintiff will prove that Defendants' interference proximately caused its injury. Proximate cause requires proof of both cause-in-fact and foreseeability.  The test for cause-in-fact is whether the tortious conduct was a substantial factor in bringing about the alleged injury, *i.e.,* a factor without which the injury would not have occurred.

**Interference Caused Actual Damage or Loss**

51.     Finally, Plaintiff will show that actual damage or loss occurred as a result of the alleged interference.  Texas courts have held that there is no cause of action for conduct that merely delays execution of a contract.

**Remedies**

52.     In an action for interference with the business relations of another, the plaintiff may recover damages that are a natural and proximate consequence of the interference. A defendant may be liable for damages such as (a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; (c) emotional distress or actual harm to reputation if they are reasonably to be expected to result from the interference.

**The Accrual of the Claims**

53.     Upon information and belief, on May 30, 2022, with the aiding and abetting by Quoc Linh Company and its owners, Ho Chi Minh Stock Exchange issued a final request to force ITACO to disclose the Decision to open the bankruptcy proceedings. Thus, the accrual begins on that day, where harm to Plaintiff has resulted.

**D.**     **Aiding and Abetting**.

54.     Defendants aided and abetted Ho Chi Minh Stock Exchange in expropriating Plaintiff's personal property.

**E.**     **Actual and Apparent Authority / Ratification / Vice-Principal**.

55.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if copied herein.

56.     Plaintiff has satisfied all conditions precedent.

## ACTUAL DAMAGES

57.     As a direct, proximate, and producing cause of Defendants' conduct, Plaintiff has suffered actual and consequential damages within the jurisdictional limits of the Court, including but not limited to, mental anguish in the past and future, lost profits, and loss of the value of her stocks, directly in the amount of $28,497,074.00.

## EXEMPLARY DAMAGES

58.     In addition to actual damages, Texas Civil Practice and Remedies Code § 41.003 and the common law of Texas entitle Plaintiff to recover exemplary damages. Defendants' conduct was done knowingly, with actual awareness, malice and intent, and/or with such an entire want of care as to indicate that the acts and omissions in question was the result of a conscious indifference to the rights, welfare or safety of Plaintiff, such that Plaintiff is entitled to an award of exemplary or punitive damages, to be determined by the jury commensurate with the facts of this case.

59.     Because Defendants' tortious and wrongful conduct violated the Texas Penal Code, exemplary damages in this case are not limited under Sec. 41.008 (b) of the Texas Civil Practices and Remedies.  Plaintiff alleges that exemplary damages in this case are warranted and should be awarded in a manner that takes into account the nature of the wrongful actions of Defendants, the character of the conduct involved, the degree of the Defendants' culpability, the situation and sensibilities of the parties, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally as follows:

1.     Economic and compensatory damages in the amount of **$28,497,074.00;**

2.     Actual damages including specific and general damages in amounts to be determined at trial;

3.     Exemplary damages in the amount of **$300,000,000.00;**

4.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

5.     Such other and further relief available under all applicable state and federal laws and any relief the court deems just and appropriate; and

6.     A trial by jury as to all Defendants.

Dated October 13, 2022.

Respectfully submitted,

**MESTEMAKER, STRAUB & ZUMWALT**
By: */s/ David K. Mestemaker*
**David K. Mestemaker**
State Bar No. 00793002
dkm@mandsattorneys.com
**(Do not use this email for service of documents)**
Mestemaker, Straub & Zumwalt
3100 Timmons Lane, Suite 455
Houston, TX 77027
(713) 626-8900 Telephone
(713) 626-8910 Telecopier
**Designated E-Service Email Address**
The following is the undersigned attorney's designation of electronic service email address for all electronically served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21(a). (**Contact@mandsattorney.com**). This is the undersigned's ONLY electronic service email address and service through any other email address will be considered invalid.

**THE TAMMY TRAN LAW FIRM**
By: */s/ Minh-Tam Tran*
**MINH-TAM "TAMMY" TRAN**
Texas Bar No. 20186400
ttran@tt-lawfirm.com
2915 Fannin
Houston, Texas 77002
Telephone: (713) 655-0737
Telecopier: (713) 655-0823

**ATTORNEYS FOR PLAINTIFF**