## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MAYA DANGELAS,** | § | |
| *PLAINTIFF*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | **4:22-CV-003419** |
| **QUOC LINH TRADING SERVICE** | § | |
| **CONSTRUCTION COMPANY** | § | |
| **LIMITED;TRAN, QUANG QUOC;** | § | |
| **AND HUYNH, THI CAM LINH,** | § | |
| *DEFENDANTS*. | § | |

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MAYA DANGELAS,** | § | |
| *PLAINTIFF,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | **4:22-CV-003419** |
| **QUOC LINH TRADING SERVICE** | § | |
| **CONSTRUCTION COMPANY** | § | |
| **LIMITED;TRAN, QUANG QUOC;** | § | |
| **AND HUYNH, THI CAM LINH,** | § | |
| *DEFENDANTS.* | § | |

---

### AFFIDAVIT OF MINH-TAM TRAN

---

THE STATE OF TEXAS      §
COUNTY OF HARRIS        §

BEFORE ME, the undersigned Notary Public, on this day personally appeared **MINH-TAM TRAN** who being by me duly sworn on oath deposed as follows:

"My name is Minh-Tam Tran, I am over the age of eighteen and fully competent to make this Affidavit. The following facts are true and correct and are within my personal knowledge.

1. I am General In-house Counsel for Plaintiff Maya Dangelas, in the above-styled and numbered civil action (the "Quoc Linh Matter"). I am also Litigation Counsel for Tan Tao Investment & Industry Corporation (ITACO) and is authorized by my client, Dr. Maya Dangelas, Chairwoman of ITACO, to pursue the above-mentioned matter in the Federal Court.

2. A Status Conference Hearing was held on May 10, 2023, and the Honorable Magistrate, the "Court," considered the plight and dilemma of Dr. Maya Dangelas, pleadings, the documents, and counsel's representation.

3. At the Status Conference, Plaintiff's counsel advised the Court that Dr. Maya Dangelas is currently suing the Socialist Republic of Vietnam (Vietnam) in

two pending International Arbitrations[1]. (See for example Exhibit 2A: Notice of Arbitration of ITACO, incorporated into and attached)

4. Plaintiff has been nobly and resiliently fighting against Vietnam for violations of the trade treaties between the United States and Vietnam by committing horrifying acts of corruption, bribery, property takings, humanitarian war crimes, and extortion against the many investors and their families, and notably, U.S. investors, taking away their properties and investments in Vietnam.

5. The critical and immediate issue at hand is that the Ministry of Justice of Vietnam ("MOJ") represents Vietnam as General In-house Counsel in both Arbitrations (together with outside co-counsel) **and *also* serves as the central authority under the Hague Service Convention in this case**. *Thus, it has a serious conflict of interest and has created an impossible situation for Plaintiff to effectuate service of process on Defendants.* As such, it is impractical and virtually impossible to expect the MOJ of Vietnam, as the central authority, to neutrally effect formal service on citizens of Vietnam for Plaintiff, especially in this case, Dr. Dangelas is suing three (3) Vietnamese citizens and/or entities who created and conspired with Vietnam's organs to take away Plaintiff's properties.

6. Pursuant to the May 10, 2023 Status Conference and instructions of the Court, Counsel for Plaintiff Maya Dangelas has prepared Plaintiff's motion seeking leave of the Court for permission to effect alternate means of service showing as follows:

   a. Formal Service Under Article 5 of the Hague Service Convention via the Ministry of Justice of Vietnam as a Central Authority is *impossible*;

   b. Hague Service Convention's Article 10 (a) methods allows service by postal channels;

   c. To procedurally effect service in this matter via alternative means as provided by Hague Service Convention's Article 10 (a), Fed. R. Civ. P. 4(f)(2)(C)(ii) Requires International Service by Mail to be addressed and sent by the Court's Clerk.

7. The service of process on Defendants via alternative means with the Court's

---

[1] 1) PCA Case No. 2020-05 - *Dr. Maya Dangelas, U.S. Global Institute, Inc., and Angels Company, Inc. v. The Socialist Republic of Vietnam*; and

2) PCA Case No. 2023-06: *Dr. Maya Dangelas and Tan Tao Investment & Industry Corporation v. The Socialist Republic of Vietnam*.

permission should be possible as provided:

    a. Fed. R. Civ. P. 4(f) and (h) govern service on individuals and entities outside the United States;

    b. Specifically, Fed. R. Civ. P. 4(h) provides that an entity outside the United States may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery;"

    c. Specifically, Fed. R. Civ. P. 4(f)(1) provides that "**an individual**–other than a minor, an incompetent person, or a person whose waiver has been filed–**may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents**." (The "HSC.");

    d. The HSC does indeed permit service by "postal channels" in countries that do not object to it; and

    e. Art. 10 (a) of the HSC allows service by mail or courier–FedEx or UPS in addition to the post office. (*See* Exhibit 1: The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, incorporated into and attached.)

8. In conclusion, the law of the United States and Vietnam both allow the service of citation through mail under certain conditions: specifically, to comply with United States law, the citation must be addressed and sent by the Clerk of the Court. Also, to comply with Vietnamese law, the mailing must require acknowledgment of receipt by the Defendants.

FURTHER AFFIANT SAYETH NOT."

Executed in Harris County, Texas, on June 2, 2023.

**MINH-TAM TRAN**

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 2nd day of June 2023, to certify which witness my hand and seal of office.

**NOTARY PUBLIC**
**IN AND FOR THE STATE OF TEXAS**

ADAMS LAM TRAN
My Notary ID # 126561852
Expires October 1, 2025

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MAYA DANGELAS,** | § | |
| *PLAINTIFF*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.:** |
| | § | **4:22-CV-003419** |
| **QUOC LINH TRADING SERVICE** | § | |
| **CONSTRUCTION COMPANY** | § | |
| **LIMITED;TRAN, QUANG QUOC;** | § | |
| **AND HUYNH, THI CAM LINH,** | § | |
| *DEFENDANTS.* | § | |

# EXHIBIT 2A

1976 UNCITRAL Arbitration Rules
_____

**Dr. Maya Dangelas**

Claimant

*and*

**Tan Tao Investment & Industry Corporation (ITACO)**

Claimant

*v.*

**Socialist Republic of Vietnam**

Respondent

---

**Notice of Arbitration**

---

June 23, 2022

QUINN EMANUEL URQUHART & SULLIVAN LLP

6, rue Lamennais                    90 High Holborn
75008 Paris                         WC1V 6LJ London
France                              United Kingdom

TAMMY TRAN ATTORNEYS AT LAW, LLP
2915 Fannin St.
Houston, TX, USA 77002

## TABLE OF CONTENTS

Introduction ................................................................................................ 1

I.    The Parties ........................................................................................ 3

    A.    The Claimants (Dr. Dangelas and ITACO) ............................................. 3

    B.    The Respondent (Vietnam) ................................................................ 4

II.    Overview of the Facts Underlying Vietnam's Breaches ................................. 5

    A.    ITACO: A Vietnamese Success Story .................................................... 6

    B.    The Background to this Dispute: Vietnam's Attacks on Dr. Dangelas ... 9

    C.    The Investment Dispute: Vietnam's Attempts to Liquidate ITACO..... 11

III.    Vietnam's Breaches ....................................................................... 17

    A.    Expropriation (Treaty, Article 10) .................................................... 18

    B.    Fair and Equitable Treatment (Treaty, Article 3(1)) ........................... 18

    C.    Full Protection and Security (Treaty, Article 3(1)) ............................. 19

    D.    Unreasonable and Discriminatory Impairment (Treaty, Article 3(2)) . 19

    E.    Most-Favored Nation and National Treatment (Treaty, Article 2) ..... 19

IV.    The Claimants' Damages .................................................................. 20

V.    The Tribunal's Jurisdiction ............................................................... 20

    A.    The Claimants Have an Investment Dispute under the Treaty........... 20

        1.    The Claimants Are Companies of the United States for the Purposes of the Treaty ....................................................... 20

        2.    The Claimants' Investment Dispute Arises Out of and Relates to Investment Authorizations and Covered Investments ........... 22

    B.    Vietnam Has Consented to Arbitration of the Claimants' Investment Dispute ......................................................................................... 23

VI.    Procedural Issues .......................................................................... 24

    A.    Constitution of the Arbitral Tribunal ................................................ 24

    B.    Language of the Arbitration ............................................................. 25

C.      Place of the Arbitration ................................................................. 25

VII.   Request For Relief ..................................................................................... 26

**INTRODUCTION**

1.      This Notice of Arbitration is submitted on behalf of Dr. Maya Dangelas, a US national, and Tan Tao Investment & Industry Corporation ("ITACO", together with Dr. Dangelas, the "Claimants"), a Vietnamese company owned and controlled by her, pursuant to Article 4 of the Agreement between the United States and the Socialist Republic of Vietnam on Trade Relations (the "Treaty").[1]

2.      The Claimants have no other choice but to bring their claims under the Treaty because the Socialist Republic of Vietnam ("Vietnam") – one of the world's last single-Party, Communist regimes – has sought to liquidate ITACO, a multi-billion US Dollar company, on the basis of a court decision totaling just approximately USD 1 million in favor of a company owned by family members of Communist Party cadres.  This is no legitimate exercise of Sovereign power, but a clear attempt to silence a political opponent and benefit political "allies".

3.      ITACO was created in 1996 by Dr. Dangelas, an American economist and entrepreneur of Vietnamese origin.  Dr. Dangelas saw an opportunity to create a "one door service" for foreign companies seeking to invest in Vietnam by providing the resources in dedicated industrial facilities called industrial parks.

4.      ITACO pioneered the industrial park concept in Vietnam and achieved resounding success.  ITACO built industrial parks throughout Vietnam, but also gave back to the underserved citizens of Vietnam – offering them jobs and key public utilities (like, schools, hospitals, water treatment facilities, etc.) that the State was unable to provide.  For example, Dr. Dangelas and ITACO transformed the Duc Hoa district in Long An province – where ITACO's Tan Duc Industrial Park was located – from an area of fallow land and a mass grave from the Vietnam War to one of the most prosperous districts in Vietnam.

---

[1]      Agreement between the United States and the Socialist Republic of Vietnam on Trade Relations, **Exhibit CL-1**.  All references to articles in the Treaty are references to articles in Chapter IV of the Treaty.

5.    As a result of her public works, the people of Duc Hoa elected Dr. Dangelas to Vietnam's National Assembly in a landslide.  As one of only a handful of non-Communist members of that legislative body, Dr. Dangelas introduced legislation benefitting the private sector and used her role to speak out against corruption and in favor of a transparent economic practices.

6.    In Vietnam, however, free speech (much less public criticism of the corrupt Statist *status quo*) is not tolerated.  As a result, Vietnamese officials forced Dr. Dangelas to resign.  However, they did not stop there.  They also sought to silence Dr. Dangelas. Since 2012, Vietnam has engaged in numerous acts of harassment against Dr. Dangelas, her family, and her companies.  Its media has published shameful, sexist articles about Dr. Dangelas and her family.  Its secret police have stormed ITACO's offices and abducted one of its employees who was detained without charges.  It has also terminated a coal powerplant concession in Kien Luong, which was awarded to another company owned and controlled by Dr. Dangelas.  This has led to a separate arbitration, commenced in September 2019 under the Treaty, between Dr. Dangelas (as well as two of her companies) and Vietnam (the "Kien Luong Arbitration").

7.    Most recently, however, Vietnam has sought to liquidate ITACO – a multi-billion US Dollar company – on the basis of an alleged contractual debt amounting to less than USD 1 million.  That alleged debt results from a contract between one of its contractors, Vietnam Land and the contractor's subcontractor, Quoc Linh Construction Trading & Services Company ("Quoc Linh") – a company owned by a family member of the Secretary General of the Long An Communist Party.  ITACO is not a party to that contract.  However, it has been found liable for debts arising out of that contract on the basis of false and corrupt evidence.

8.    Flouting an unambiguous decision of Vietnam's Court of Cassation, a lower court in Duc Hoa has decided – on no discernable basis – that ITACO should be responsible for the debts of Vietnam Land, a separate company, because ITACO purportedly benefited from unpaid alleged works of Quoc Linh.  In reality, however, Quoc Linh did not carry out the works for which it sought payment and instead submitted falsified and corrupted evidence in support of its claims.  On this dubious basis, Vietnamese

authorities have decided to liquidate ITACO and sought to publicize that decision, which would be disastrous for ITACO.

9.      Both actions are now imminent, and will likely cause losses to the Claimants of **over USD 2 billion**.

10.     In the circumstances, the Claimants have no choice but to demand that their dispute with Vietnam be resolved pursuant to the 1976 UNCITRAL Rules.  In this Notice of Arbitration, the Claimants introduce the Parties to the dispute (**I**) before establishing the facts of Vietnam's breaches (**II**), the legal basis for those breaches (**III**), the damages resulting from those breaches (**IV**), and the Tribunal's authority to award compensation for those breaches (**V**).  The Claimants close with procedural matters (**VI**) and their prayer for relief (**VII**).

## I.      THE PARTIES

11.     The Parties to this arbitration are the Claimants, Dr. Dangelas and ITACO (**A**), and the Respondent, Vietnam (**B**).

### A.      The Claimants (Dr. Dangelas and ITACO)

12.     **Dr. Maya Dangelas** is an American entrepreneur and businesswoman born in Vietnam, who, through ITACO, pioneered the concept of industrial parks in Vietnam. She owns and also controls ITACO as the legal representative of a majority of ITACO's shareholders and the operating mind of ITACO.

13.     Tan Tao Investment & Industry Corporation (**ITACO**) is one of Vietnam's largest publicly traded companies. It constructs and operates industrial parks throughout the country. Those industrial parks provide foreign investors a "one door service". Through ITACO they obtain the facilities, material, and labor that they need to operate in Vietnam without being forced to wait through the years of administrative steps that a foreign investor that are otherwise necessary to set up a presence in Vietnam. ITACO's parks offer jobs to hundreds of thousands of underserved citizens and improve their lives in other ways – namely by transforming the landscape and offering

utilities (schools, hospitals, waste-treatment plants, etc.) that Vietnam's corruption-ridden bureaucracy does not.

14. The Claimants may be reached through their counsel in this arbitration, Quinn Emanuel:

Philippe Pinsolle
Alexander G. Leventhal
Quinn Emanuel
6, rue Lamennais
75008 Paris, France
+33.1.73.44.60.00
philippepinsolle@quinnemanuel.com
alexanderleventhal@quinnemanuel.com


Stephen Jagusch QC
Quinn Emanuel
90 High Holborn
London WC1V 6LJ, United Kingdom
+44.20.7653.2000
stephenjagusch@quinnemanuel.com

Minh Tam (Tammy) Tran
The Tammy Tran Law Firm
2915 Fannin
Houston, Texas 77002
ttran@tt-lawfirm.com

**B.    The Respondent (Vietnam)**

15. As the Treaty contains no notice provisions and Vietnam has not named external counsel in this dispute, Vietnam can be reached at the offices of its President, Prime Minister, and Minister of Justice:

President's Office
2 Hung Vuong, Ba Dinh
Hanoi, Vietnam

Prime Minister's Office
16 Le Hong Phong Street, Ba Dinh
Ha Noi, Vietnam

Ministry of Justice
58 – 60 Tran Phu, Ba Dinh,
Hanoi, Vietnam

16.     Vietnam is a State that continues to be run by a circle of Communist Party cadres. Those cadres have used the full police powers of the State to protect their political – as well as economic – authority.  In the words of Human Rights Watch, "[t]*he Communist Party of Vietnam monopolizes power through the government, controls all major political and social organizations, and punishes people who dare to criticize or challenge its rule.*"[2]

17.     Most recently, they have profited from Vietnam's rapid economic growth to increase their own wealth – at all costs.  Numerous are the cases, in which Vietnam's cadres have employed the organs of State to protect their economic authority – even where doing so means that Vietnam would breach its domestic and international obligations.[3]

18.     Unsurprisingly, Vietnam has also used its sovereign authority illegitimately against Dr. Dangelas and ITACO.

II.     OVERVIEW OF THE FACTS UNDERLYING VIETNAM'S BREACHES

19.     This dispute is about ITACO, one of Vietnam's largest publicly traded companies (**A**). It follows from a series of attacks by Vietnam against Dr. Dangelas, including the illegal and illegitimate termination of another project, which has led to a separate arbitration (**B**).  At the heart of this dispute is Vietnam's attempt to liquidate ITACO, a billion US

---

[2]     "Vietnam, Events of 2018", Human Rights Watch, available at https://www.hrw.org/world-report/2019/country-chapters/vietnam, **Exhibit C-12**.  See also "Vietnam, Events of 2019", Human Rights Watch, available at https://hrwmirror.org/world-report/2020/country-chapters/vietnam, **Exhibit C-18**; "Vietnam, Events of 2021", Human Rights Watch, available at https://www.hrw.org/world-report/2022/country-chapters/vietnam, **Exhibit C-27**.

[3]     See e.g. "ABN Amro pays $4.5m to free staff", Financial Times, November 26, 2006, **Exhibit C-1**; "Vietnam PM orders speedy trial in Dutch bank case", Reuters, January 19, 2007, **Exhibit C-2**; "Jail a Risk for Vietnam Investors", ABA Journal, August 14, 2007, **Exhibit C-3**; "Vile Political Revenge Seen as RFA Blogger Receives 10-Year Jail Sentence in Vietnam", Radio Free Asia, March 9, 2020, **Exhibit C-20**; "Ex-vice chairman of HCMC sentenced to eight years for causing a great loss to treasury", Vietnam Times, September 22, 2020, **Exhibit C-21**; "Vietnamese Court Sentences Tycoon to 30 Years", Wall Street Journal, June 9, 2014, **Exhibit C-7**.

Dollar company on the basis of an alleged debt of less than USD 1 million, as reprisals for Dr. Dangelas having commenced the Kien Luong Arbitration (**C**).

### A.      ITACO: A Vietnamese Success Story

20.      ITACO is the brainchild of Dr. Maya Dangelas.

21.      Dr. Maya Dangelas began her career in Vietnam's public sector (at the time, the only way to participate meaningfully in the economy of Vietnam).[4]   Serving as Investment Director of the Investment Promotion Center in Ho Chi Minh City, she helped draw over USD 1.5 billion for foreign investment in large infrastructure and other projects in Ho Chi Minh City, Vietnam's economic capital, in just two years.[5]

22.      In 1993, Dr. Dangelas left the government to create the Tan Tao Group, a group of companies that pioneered the construction and operation of industrial parks.

23.      Dr. Dangelas sought to create a "one door service" for foreign investors as Vietnam integrated into the world economy after decades of isolation during the United States trade embargo.[6]   Industrial parks, as Dr. Dangelas has explained, are "*large industrial zones where investors are provided the infrastructure and industrial resources they need to operate*."[7]   Industrial parks would allow domestic and foreign investors to avoid three to five years of bureaucratic hurdles required to set up a business in Vietnam.[8]

---

[4]      Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 9.

[5]      Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 9.

[6]      Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 13.

[7]      Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 13.

[8]      Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 13.

24. ITACO was the first company to obtain an investment license (required by Vietnamese law for any private investment over approximately USD 13 million) for an investment park, the Tan Tao Industrial Park.[9]

25. Dr. Dangelas and ITACO also pioneered a new business model for raising capital. To finance the construction of the Tan Tao Industrial Park, she used as collateral for bank loans the land rights the Government had granted ITACO – as property rights can only be granted for a maximum of 70 years by the Government, which owns all land in Vietnam.[10] ITACO was a "pilot case" for this new practice of raising financing, which spread throughout Vietnam.[11] This practice allowed ITACO to raise over USD 400 million in financing for the Tan Tao Industrial Park with just USD 1.2 million in equity.[12]

26. In addition, in building the Tan Tao Industrial Park, Dr. Dangelas pioneered a new model for serving underserved citizens. Rather than only pay compensation directly to individuals that would be displaced to make way for any project (money that was often misspent by its recipients), Dr. Dangelas invested in new housing for residents, gave them jobs, and built infrastructure (water treatment, sewage facilities, schools, roads, etc.) that the Government had not been able to provide.[13]

27. The 3,000 acre Tan Tao Industrial Park was launched in 1997. Before that, the Binh Chanh district of Ho Chi Minh City (where the Tan Tao Industrial Park is located) was underdeveloped and shunned by investors because it was flooded with brackish

---

9    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 13.

10   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 14.

11   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 14.

12   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 17.

13   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 20.

water.[14]  After the Tan Tao Industrial Park was launched, however, the Binh Chanh area was forever changed for the better.  ITACO brought with it hundreds of thousands of jobs and modernized living conditions.[15]

28.    Many other industrial parks followed requiring the same types of investment by ITACO and its shareholders: Tan Duc Industrial Park in Long An province, the Nhon Trach Industrial Park in Dong Nai province, and others in the north and center of Vietnam.[16]

29.    In constructing these parks, ITACO invested the same resources to transform the areas from barren areas to thriving economic zones.  The Tan Duc Industrial Park, for example, was transformed from a barren area into a flourishing hub for business and community.   The task was so substantial that even Vo Tong Xuan, a famous Vietnamese scientist and academic warned against carrying out such a substantial endeavour: "*No one can do it.  Don't wake this area up if you don't want to get more trouble because of the acidic water*..."[17]  Dr. Dangelas and ITACO did it, leading a team of international experts to turn more than 10,000 acres of acidic land into the number one green and clean industrial park in Vietnam.[18]

30.    ITACO also invested in the people of those regions.  It built key facilities that the Vietnamese state had failed to provide – schools, hospitals, and other facilities.  This led to an increase in the local population (the population of the Binh Chanh district, for example, increased from 200,000 in 1996 to 800,000 in 2000 once the Tan Tao and Tan Duc Industrial Parks were built to several million today), but also revenues for the

---

[14]    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 18.

[15]    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 21.

[16]    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 24.

[17]    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 25.

[18]    Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 26.

State (the area in which the Tan Tao Industrial Park is located has become one of the top eight contributors of tax revenue in all of Vietnam).[19]  Those public works projects included Tan Tao University, Vietnam's first private US style university.

31.   In a country whose economy is still dominated by the Government, ITACO showed that the private sector could be a force for good in the economy and peoples' lives. ITACO's examples reached 64 provinces of Vietnam, whose representatives sought to learn from its business model.[20]  In 2006, Vietnam's Prime Minister at the time, Nguyen Tan Dung, even invited Dr. Dangelas to build and operate a 4,400 MW powerplant in Kien Luong, a region in southern Vietnam in whose local government he had served.  That project is today the subject of the Kien Luong Arbitration.[21]

32.   A video showcasing ITACO's success is filed with this Notice of Arbitration as **Exhibit C-38**.

   **B.      The Background to this Dispute: Vietnam's Attacks on Dr. Dangelas**

33.   Because of the positive impact that ITACO had on the lives of hundreds of thousands of residents, the people of Duc Hoa (where the Tan Duc Industrial Park is located) encouraged Dr. Dangelas to run for a seat in Vietnam's National Assembly in 2012 – which she did.  Dr. Dangelas has explained that she decided to run for office after an exchange with an elderly gentleman from the Duc Hoa area, who told Dr. Dangelas that "*the people of the area were extremely grateful for everything* [she] *had done for the people of the area and urged* [her] *to represent them in the National Assembly.*"[22]

---

[19]   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 21.

[20]   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 23.

[21]   See e.g. Memorial on the Merits in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-29**; Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**.

[22]   Third Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated May 9, 2022, **Exhibit C-30**, para. 31.

34.    In the election of 2012,  Dr. Dangelas rode a groundswell of popular support to become one of only a handful of parliamentarians in the 500-member legislative body who were *not* affiliated with the Communist Party – a shock for Vietnam's Communist establishment.

35.    In office, Dr. Dangelas drafted legislation that supported Vietnam's private sector business environment and used that public role to speak out against corruption and advocate for greater transparency and freedom in Vietnam's economy.  Vietnam's Communist party cadres, however, did not take well to this.  They forced Dr. Dangelas to resign on the absurd grounds that the application that Dr. Dangelas had submitted to obtain approval by central authorities to run for office contained two purported "inaccuracies".[23]

36.    First, Vietnam alleged that Dr. Dangelas had failed to disclose that she had been a member of the Communist Party (like most Government functionaries). However, the application form for candidacy did not ask whether Dr. Dangelas *had been*, but was no longer, a member of the Communist Party.

37.    Second, Vietnam alleged that Dr. Dangelas had suggested incorrectly that she was divorced.  At the time, Dr. Dangelas' divorce was final in Vietnam.  However, in order to create a cause for removing Dr. Dangelas from her post, Vietnamese courts annulled that divorce decision *with retroactive effect* – a grotesque abuse of Vietnam's absolute authority over the judiciary.

38.    This, however, was only the first of other attacks by Vietnam against Dr. Dangelas.

39.    After her dismissal, Dr. Dangelas fled to the United States, where two of her daughters had been living since 2002 (with great sadness, Dr. Dangelas was required to leave a third daughter, the biological daughter of her brother Dang Thanh Tam, with relatives in Vietnam as adoption documentation had not yet been finalized). Nonetheless, over the coming years, Dr. Dangelas, her family, and her companies were the subject of

---

[23]    First Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated September 23, 2020, **Exhibit C-22**, para. 24.

numerous attacks.  Vietnamese police surveilled Dr. Dangelas' home in Vietnam, no doubt an attempt to abduct Dr. Dangelas' daughter who remained in Vietnam. Vietnamese authorities raided ITACO's archives, clearly seeking a pretext for criminal action against Dr. Dangelas.  Then, Vietnamese secret police abducted an ITACO employee (Ms. Nguyen Thi Bich Trang), detained her for three months without charging her or giving her access to a lawyer, and brutalized her.  Dr. Dangelas' movements were posted online and she received numerous threats against her personal security by nefarious actors clearly acting for Vietnam.[24] Vietnamese media alleged falsely that Dr. Dangelas was a CIA agent.[25]  Hackers (no doubt linked to Vietnam) posted intimate photos of Dr. Dangelas' daughter on a public website after infiltrating her computer.[26]  All the while, Dr. Dangelas has been subject to a sexist and, frankly, shameful smear campaign in Vietnam's media.[27]

**C.      The Investment Dispute: Vietnam's Attempts to Liquidate ITACO**

40.    In 2018, Vietnam initiated another attack on Dr. Dangelas.  That attack is the subject of the present dispute.

41.    On January 25, 2018, the People's Court of Ho Chi Minh City issued an *ex parte* decision (without ITACO's participation) to initiate bankruptcy proceedings against ITACO (the

---

[24]     "Hackers continue to hunt for Ms. Dang Thi Hoang Yen: 'Remove mask of Quan Lam Bao'", Wordpress, April 20, 2013, **Exhibit C-5**; "Turn over Dang Thi Hoang Yen", Blogspot, October 9, 2012, **Exhibit C-4**.

[25]     First Witness Statement of Dr. M. Dangelas in PCA Case No. 2020-05 dated September 23, 2020, **Exhibit C-22**, para. 29.

[26]     "Hackers continue to hunt for Ms. Dang Thi Hoang Yen: 'Remove mask of Quan Lam Bao'", Wordpress, April 20, 2013, **Exhibit C-5**; "Turn over Dang Thi Hoang Yen", Blogspot, October 9, 2012, **Exhibit C-4**; The Bastard Child Whose Last Name Is 'Dang' of President Truong Tan Sang", Vietnamese Community USA Blog, dated June 14, 2013, **Exhibit C-6**.

[27]     See e.g. "Why did the Principal of Tan Tao University decide to file a lawsuit against the Vietnamese while eloping with her son-in-law in a foreign country?", Chinh Tri Viet Nam, September 9, 2019, **Exhibit C-16**; "Why did businesswoman Dang Thi Hoang Yen sue former Prime Minister Nguyen Tan Dung?", Viet My News, September 13, 2019,  **Exhibit C-17**; "The Bastard Child Whose Last Name Is 'Dang' of President Truong Tan Sang", Vietnamese Community USA Blog, June 14, 2013, **Exhibit C-6**.

"Bankruptcy Decision").[28]  The court found that there was sufficient evidence "*to prove that Tan Tao Investment and Industry Corporation is insolvent*."

42.  The Bankruptcy Decision was based on a January 16, 2017 decision of the Duc Hoa People's District Court (the "First Duc Hoa Decision"), which arose out of a dispute between one of ITACO's contractors, Vietnam Land, and Vietnam Land's subcontractor, Quoc Linh.  ITACO was not a party to that contract.  While Vietnam Land was, at one point in time, operated by Dr. Dangelas' estranged ex-husband, Jimmy Tran, Vietnam Land and ITACO were, and still are, unrelated companies.  Quoc Linh claimed that Vietnam Land owed Quoc Linh for sand filling that was done and never paid for.  Quoc Linh claimed at ITACO should pay because it had "benefitted" from that work.

43.  The First Duc Hoa Decision found ITACO liable for Vietnam Land's purported debts to Quoc Linh of approximately USD 1 million.  Defying logic, the decision "reasoned" that ITACO had been "unjustly enriched" by Quoc Linh's works and therefore must compensate Quoc Linh for the work.[29]

44.  That decision was deeply flawed on two levels.

45.  First, the findings of the First Duc Hoa Decision are simply wrong as a matter of law as ITACO is a separate entity and cannot be liable for Vietnam Land's debts.  Nor can it be liable on some pseudo unjust enrichment theory.

46.  Second, they are wrong as a matter of fact.  ITACO was not unjustly enriched because no work was ever done.  Vietnam Land's suggestion to the contrary was based on falsified documents: forged "receipts" showing that the work was allegedly done.

47.  Under Vietnam Land's contract with Quoc Linh, Vietnam Land would need to formally accept and approve of Quoc Linh's work – namely, by testing that the sand used had

---

[28]  Decision of the People's Court of Ho Chi Minh City dated January 25, 2018, **Exhibit C-9**.

[29]  Decision of the Court of Appeal of Long An dated May 5, 2017, **Exhibit C-8**.

come from the specified destination in the contract.  That, however, had never been done.

48.    In fact, it had been disclosed earlier that Vietnam Land's General Director Mr. Tran had colluded with Quoc Linh and other contractors in order to overstate the amount of works done, which was why Vietnam Land had decided to remove Mr. Tran and terminate the contract with Quoc Linh.  Vietnam Land sought to compel production of the invoices for purchase of sand by Quoc Linh, but (unsurprisingly) was flatly rejected.

49.    During the course of the litigation, the Vietnamese Government took the unusual step of openly advocating in favor of Quoc Linh against ITACO before the court.  It is likely that the Government used other means of influence to ensure its desired decision, which was clearly flawed.

50.    Yet, putting to one side the profound flaws in the First Duc Hoa Decision, that decision could not, in any event, amount to "evidence" to prove that ITACO was insolvent.

51.    While Vietnam's insolvency law defines an "insolvent entity" as "*an enterprise or a cooperative having failed to meet the debt liability for 03 months from the deadline for repayment*", the First Duc Hoa Decision was not final and still subject to appeal before Vietnam's higher courts.

52.    Moreover, as ITACO explained in a letter dated June 5, 2018 to Vietnamese authorities, ITACO's financial statements (which were audited by E&Y) showed that its assets totaled approximately VND 13,000 billion (or nearly USD 600 million) while its liabilities totaled approximately VND 2.5 billion (or approximately USD 100 million) resulting in a book value of over USD 500 million (the market value likely being over four times that).[30]

53.    ITACO only learned of the Bankruptcy Decision on 30 March 2018,[31]  but immediately informed Vietnamese authorities that the basis of the First Duc Hoa Decision was

---

[30]    Letter from ITACO to Vietnamese Authorities dated June 5, 2018, **Exhibit C-11**.

[31]    Letter from ITACO to Vietnamese Authorities dated April 3, 2018, **Exhibit C-10**.

bogus and that ITACO was solvent.[32]  In reality, ITACO explained, the Bankruptcy Decision was little more than an "*attempt to lower the reputation and image of Tan Tao Corporation in the market*" – highlighting the significant damage that would arise from Vietnam's actions.

54.     In parallel, ITACO challenged the First Duc Hoa Decision before the Long An Court of Appeal[33] and then Vietnam's highest court, the Court of Cassation.

55.     In July 2019, the Court of Cassation sided with ITACO and quashed the First Duc Hoa Decision (the "Cassation Decision").[34]  The Cassation judges explained that Quoc Linh had no contractual privity with ITACO and thus could not seek to hold ITACO responsible for the debts of its contractual counterparty, Vietnam Land.[35]  The courts also decided to suspend enforcement of the First Duc Hoa Decision and remand the matter to the lower court.[36]

56.     On September 18, 2020, however, the Duc Hoa People's District Court maintained its prior decision on virtually identical grounds (the "Second Duc Hoa Decision") – ignoring entirely the Cassation Decision.[37]  The Second Duc Hoa Decision was confirmed by the Court of Appeal on January 5, 2021.[38]

57.     ITACO appealed to the Court of Cassation on February 2, 2021, reminding the Court of its findings in the First Cassation Decision.[39]  This time, however, the Court of Cassation strangely refused even to hear the appeal.  On November 29, 2021, it

---

[32]     Letter from ITACO to Vietnamese Authorities dated April 3, 2018, **Exhibit C-10**; Letter from ITACO to Vietnamese Authorities dated June 5, 2018, **Exhibit C-11**

[33]     Decision of the Court of Appeal of Long An dated May 5, 2017, **Exhibit C-8**.

[34]     Decision of the Court of Cassation dated July 4, 2019, **Exhibit C-13**.

[35]     Hearing Transcript of the Court of Cassation dated July 4, 2019, **Exhibit C-14**.

[36]     Decision of the Head of the Civil Judgment enforcement agency dated August 12, 2019, **Exhibit C-15**.

[37]     Decision of the Court of Appeal of Long An dated January 5, 2021, **Exhibit C-23**.

[38]     Decision of the Court of Appeal of Long An dated January 5, 2021, **Exhibit C-23**.

[39]     Cassation Appeal filed by ITACO dated February 2, 2021, **Exhibit C-24**.

summarily rejected ITACO's appeal (the "Cassation Denial").[40]  The Cassation Denial, however, simply parroted the findings of the First and Second Duc Hoa Decisions – ignoring entirely the Cassation Decision.

58. Unlike the Cassation Decision, the Cassation Denial was rendered after Dr. Dangelas initiated the Kien Luong Arbitration – the only material difference in circumstances between the Cassation Decision and the Cassation Denial.

59. Now, with the Cassation Denial, Vietnam accelerated its attempts to shut down ITACO.

60. On April 15, 2022, the People's Court of Ho Chi Minh City appointed a liquidator and charged him with liquidating the assets of ITACO (the "Liquidation Decision").[41]  That decision, of course, was absurd.  ITACO was not insolvent to begin with.  However, liquidating a company with a book value of hundreds of millions of US Dollars (as its audited financial statements confirmed) on the basis of a USD 1 million debt simply made no sense – and was contrary to Vietnamese law.

61. While the liquidator did not take immediate steps to sell off ITACO's assets, he did seek to damage ITACO's reputation.

62. Within a month of the Liquidation Decision, on May 19, 2022, the liquidator wrote to the Ho Chi Minh Stock Exchange and the State Securities Commission (a State entity responsible for regulating the securities market) inquiring about the assets of ITACO in order to fulfil his mission to "*manage and liquidate assets for Tan Tao Industry and Investment Corporation.*"[42]

---

[40]     Notice of the Court of Cassation dated November 29, 2021, **Exhibit C-25**.

[41]     Decision of the People's Court of Ho Chi Minh City dated April 15, 2022, **Exhibit C-28**.

[42]     Letter from the Liquidator to Ho Chi Minh Stock and the State Securities Commission Exchange dated May 19, 2022, **Exhibit C-31**.

63. The Ho Chi Minh Stock Exchange and the State Securities Commission then wrote to ITACO on May 23, 2022.[43]  They accused ITACO of violating an obligation to report to the stock exchange "*within 24 hours*" the Bankruptcy and Liquidation Decision, which, they suggested, qualified as "*the court's judgment or decision related to the company's activities.*"  That, however, was wrong.  While the Bankruptcy and Liquidation Decisions were issued by the People's Court of Ho Chi Minh City, they are considered administrative acts – not court judgments or decisions – and therefore need not be notified to the stock exchange.

64. Moreover, the Ho Chi Minh City Stock Exchange refused to accept disclosures from ITACO.

65. On May 27, 2022, ITACO informed the Ho Chi Minh City Stock Exchange that Dr. Dangelas – ITACO's Chairwoman – had defeated Vietnam's objections to jurisdiction in the Kien Luong Arbitration and would seek to collect on an award on costs rendered in its favor.[44]

66. In a letter dated May 30, 2022, the stock exchange, however, rejected that disclosure on two bogus grounds.  First, it refused to recognize a signature on behalf of Dr. Dangelas because she signed using her US passport rather than her Vietnamese identification documents.  Second, it claimed that the information about the Kien Luong Arbitration could not be published because it is "*sensitive and unclear information.*"[45]

67. On June 2, 2022, the State Securities Commission also requested that ITACO disclose the notice of bankruptcy.[46]

---

[43]   Letter from the Ho Chi Minh Stock Exchange to ITACO dated May 23, 2022, **Exhibit C-32**; Letter from the Liquidator to Ho Chi Minh Stock and the State Securities Commission Exchange dated May 19, 2022, **Exhibit C-31**.

[44]   Letter from ITACO to Ho Chi Minh Stock Exchange dated June 5, 2022, **Exhibit C-35**.

[45]   Letter from Ho Chi Minh Stock Exchange to ITACO dated May 30, 2022, **Exhibit C-33**.

[46]   Letter from State Securities Commission to ITACO dated June 2, 2022, **Exhibit C-34**.

68.   In a June 5, 2022 letter, ITACO explained to the Ho Chi Minh Stock Exchange that it had not violated its disclosure obligations and that it was obliged to disclose neither the Bankruptcy Decision nor the Liquidation Decision.[47] ITACO noted that Vietnam's actions were "*unusual*" and violated Vietnamese law.

69.   On June 11, 2022, ITACO explained the same in a letter to the State Securities Commission.[48] In particular, ITACO noted that ITACO *still* had not received an official decision of the court accepting the petition to open bankruptcy proceedings. ITACO also warned that if the State Securities Commission forced ITACO to disclose the liquidation, it would cause "*panic and extreme severe losses*."[49]

70.   Vietnam's motives are clear. Vietnam seeks to create artificially the conditions for ITACO's liquidation. It knows that publication of the Bankruptcy and Liquidation Decisions will create a crisis of confidence in ITACO, a publicly-traded company. It seeks to justify *ex post* the Liquidation Decision with that crisis of confidence – based on entirely bogus grounds.

71.   Both publication of the Bankruptcy and Liquidation Decision disclosures and liquidation of ITACO now appear imminent and irreversible, and will create substantial damages to the Claimants. For this reason, they have no choice but to bring the present arbitration.

### III.   VIETNAM'S BREACHES

72.   Vietnam's actions constitute an expropriation under Article 10 of the Treaty (**A**); a violation of fair and equitable treatment (**B**) and full protection and security protections under Article 3(1) of the Treaty (**C**); a breach of Vietnam's obligation not to unreasonably or discriminatorily impair the Claimants' investments under Article

---

[47]   Letter from ITACO to Ho Chi Minh Stock Exchange dated June 5, 2022, **Exhibit C-35**.

[48]   Letter from ITACO to State Securities Commission dated June 11, 2022, **Exhibit C-36**.

[49]   Letter from ITACO to State Securities Commission dated June 11, 2022, **Exhibit C-36**.

3(2) of the Treaty (**D**); and a violation of Vietnam's most favored nation and national treatment provisions under Article 2 of the Treaty (**E**).

### A.    Expropriation (Treaty, Article 10)

73.    Article 10 of the Treaty protects investors against expropriations or "*measures tantamount to expropriation*":

> *Neither Party shall expropriate or nationalize investments either directly or indirectly through measures tantamount to expropriation or nationalization ("expropriation") except for a public purpose; in a non-discriminatory manner; upon payment of prompt, adequate and effective compensation; and in accordance with due process of law and the general principles of treatment provided for in Article 3.* […]

74.    Vietnam has breached Article 10 by seeking illegitimately and illegally to liquidate ITACO.

75.    That act will substantially deprive Dr. Dangelas of the value of her investment in ITACO and ITACO of its investments in the industrial parks and other assets it owns and operates.  It therefore constitutes an expropriation under international law.

76.    That expropriation is clearly illegal as Vietnam is acting without any public purpose, in a discriminatory manner, contrary to due process of law and general principles of treatment under Article 3 of the Treaty, and against no prompt, adequate and effective compensation.

### B.    Fair and Equitable Treatment (Treaty, Article 3(1))

77.    Article 3(1) of the Treaty requires Vietnam to "*at all times accord to covered investments fair and equitable treatment*":

> Each Party shall at all times accord to covered investments fair and equitable treatment and full protection and security, and shall in no case accord treatment less favorable than that required by applicable rules of customary international law.

78.    Vietnam has breached its obligation under Article 3(1) by *inter alia* seeking to liquidate ITACO and create a justification for liquidation *ex post*.  In so doing, Vietnam is violating the Claimants' legitimate expectations that Vietnam would respect its laws

and commitments; acting arbitrarily, unreasonably and discriminatorily; and failing to treat the Claimants' investments transparently and in respect of due process.  The breaches of due process are therefore both procedural and substantive.

### C.  Full Protection and Security (Treaty, Article 3(1))

79.  Article 3(1) of the Treaty also requires Vietnam to accord "*full protection and security*" to the Claimants' investments.  Vietnam failed to accord full (i.e. physical and legal) protection and security to the Claimants for the same reasons that it has breached its "*fair and equitable treatment*" obligations.

### D.  Unreasonable and Discriminatory Impairment (Treaty, Article 3(2))

80.  Article 3(2) of the Treaty requires that Vietnam "*shall in no way impair by unreasonable and discriminatory measures the management, conduct, operation and sale or other disposition of covered investments*."

81.  Vietnam is clearly impairing ITACO because it is seeking to destroy ITACO.  Vietnam's conduct is unreasonable because there was no legitimate justification for it – and Vietnam offered none.  It is also discriminatory for the aforementioned reasons.

### E.  Most-Favored Nation and National Treatment (Treaty, Article 2)

82.  Article 2 of the Treaty requires Vietnam to "*accord* [to investors and their investments] *treatment no less favorable than that it accords, in like situations, to investments in its territory of its own nationals or companies* […] *or to investments in its territory of nationals or companies of a third country*."

83.  Vietnam has breached its obligations under Article 2 by treating other foreign and domestic investors in like situations more favorably.  Notably, Vietnam has not sought to liquidate ITACO's competitors.  Those competitors, who are close to the Government, will likely be the main beneficiaries of any liquidation as they will be able to acquire ITACO's assets at fire sale prices.

**IV.    THE CLAIMANTS' DAMAGES**

84.    Vietnam's breaches are causing substantial damages to the Claimants, who will lose the full value of the Kien Luong Project.  The full value of the Claimants' losses will be quantified at a later date, but is likely to be no less than **USD 2 billion**.

**V.    THE TRIBUNAL'S JURISDICTION**

85.    The Tribunal has jurisdiction because the Claimants have an investment dispute under the Treaty (**A**) and Vietnam consented to arbitration of that dispute (**B**).

**A.    The Claimants Have an Investment Dispute under the Treaty**

86.    Under the Treaty, an "*investment dispute*" is defined by Article 1(10) of the Treaty as "*a dispute between a Party and a national or company of the other Party arising out of or relating to an investment authorization, an investment agreement or an alleged breach of any right conferred, created or recognized*."

87.    The Claimants have an "*investment dispute*" with Vietnam because Dr. Dangelas is a US national and ITACO is a "*company of the other Party*" for the purposes of the Treaty (**1**) and their dispute arises out of and relates to investment authorizations, investment agreements and alleged breaches of the Treaty in relation to covered investments (**2**).

**1.    The Claimants Are Companies of the United States for the Purposes of the Treaty**

88.    **Dr. Dangelas** is a US national, as her certificate of naturalization attests, and thus qualifies as an investor under Article 1(9) of the Treaty, which defines a "national" as "*a natural person who is a national of a Party under its applicable law*."[50]

89.    In a decision dated December 10, 2021, the tribunal in the Kien Luong Arbitration confirmed that only Dr. Dangelas' US nationality was relevant to whether she qualifies as a US national:

---

[50]    Passport of Dr. Maya Dangelas, **Exhibit C-37**.

> the Treaty <u>only requires that Dr. Dangelas be a national</u> of the United States in order to bring claims against Viet Nam. This Tribunal has <u>no power to read into the Treaty text either a prohibition against dual nationals or an effective nationality rule</u>. Therefore as far as nationality is concerned, Dr. Dangelas only needs to demonstrate, for the purpose of establishing the jurisdiction of the Tribunal ratione personae, that she possessed US nationality at the time of the alleged Treaty breach and the lodging of the Notice of Arbitration. She has done so.[51]

90. While **ITACO** is constituted pursuant to Vietnamese law, it is a company of the United States for the purposes of the Treaty.

91. Article 4(8) of the Treaty provides that "*a <u>company of a Party</u> that, immediately before the occurrence of the event or events giving rise to an investment dispute, was a <u>covered investment</u>, shall be treated as a <u>company of the other Party</u>*."

92. Article 1(1)(A) of the Treaty in turns defines a covered investment in relevant party as a "*company or enterprise*" "*<u>owned</u> or <u>controlled</u> directly or indirectly by nationals or companies of the other Party*."

93. ITACO is a company of the United States for the purposes of the Treaty because it is owned and controlled by Dr. Dangelas and the US Companies.

94. This flows from the Decision on Jurisdiction.

95. In that Decision, the Kien Luong Tribunal confirmed that TEC was <u>owned</u> by Dr. Dangelas and her companies.  It concluded that "*Dr. Dangelas's indirect shareholding in TEC is sufficient to qualify as a 'covered investment'*" and that "*Claimants have also sufficiently demonstrated that Dr. Dangelas (and the US Companies) were direct shareholders in TEC.*"[52]  This conclusion was based on TEC's shareholder register, which is definitive evidence of shareholding under Vietnamese law.

---

[51]    Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**, para. 225.

[52]    Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**, paras. 249-250.

96.     It also found that *"the weight of the evidence shows that Dr. Dangelas has <u>controlled</u>, directly or indirectly, the Project and TEC from the outset."*[53]  It concluded, on the basis of the evidence *"that Dr. Dangelas was the decision-maker for the Project (or the companies developing the Project)"* and *"the instructions came from her (or on her behalf)"*[54] as well as press reports *"depicting Dr. Dangelas as the* 'builder of the largest thermal power plant in Vietnam'.*"*[55]

97.     The same is true for ITACO.  Dr. Dangelas owns and controls a majority of ITACO shares and is the operating mind behind the company.

    **2.**     **The Claimants' Investment Dispute Arises Out of and Relates to Investment Authorizations and Covered Investments**

98.     The Claimants' investment dispute arises out of and relates to breaches of the Treaty with respect to covered investments.

99.     Article 1(1) of the Treaty defines a covered investment as follows:

> "investment" means every kind of investment in the territory of a Party owned or controlled directly or indirectly by nationals or companies of the other Party, and includes investment consisting or taking the form of:
>
> A.     a company or enterprise;
>
> B.     shares, stock, and other forms of equity participation,  and bonds, debentures, and other forms of debt interests in a company;
>
> C.     contractual rights, such as under turnkey, construction or management contracts, production or revenue sharing contracts, concessions, or other similar contracts;
>
> D.     tangible property, including real property, and intangible property, including rights, such as leases, mortgages, liens and pledges;

---

[53]     Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**, para. 258.

[54]     Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**, para. 261.

[55]     Decision on Jurisdiction in PCA Case No. 2020-05 dated December 10, 2021, **Exhibit C-26**, para. 262.

E.      intellectual property, including […] industrial designs and rights in plant varieties]; and

F.      rights conferred pursuant to law, such as licenses and permits

100.    The Claimants clearly hold investments under Article 1(1) of the Treaty – *inter alia*:

- Dr. Dangelas' shares in TEC and other Vietnamese companies constitute "investments" under Articles 1(1)(A) and 1(1)(B) of the Treaty.

- Their rights in the industrial parks granted by numerous licenses, permits, and other official decisions are investments under Articles 1(1)(C) and (F).

- The real property at industrial park and other project sites (as well as the land rights in those sites) constitute investments under Article 1(1)(D).

- The intellectual property rights in the design of those projects constitute investments under Article 1(1)(E).

101.    Vietnam breached its Treaty obligations with respect to all of those investments by seeking to liquidate ITACO and also by seeking to justify that liquidation *ex post* with publication of its illegal Bankruptcy and Liquidation Decisions.

**B.      Vietnam Has Consented to Arbitration of the Claimants' Investment Dispute**

102.    Vietnam has consented to arbitration of the Claimants' investment dispute pursuant to the UNCITRAL Arbitration Rules.

103.    Articles 4(2) and 4(3) of the Treaty provide that an "investment dispute" may be submitted to arbitration pursuant to the UNCITRAL Arbitration Rules.

104.    Under Article 4(2), "*if* [an investment dispute] *has not been resolved through consultation and negotiations, a national or company of one Party that is a party to an investment dispute may submit the dispute for resolution under one of the following alternatives:* […] *C. in accordance with the terms of paragraph 3.*"

105.    Article 4(3)(A) (e.g. the paragraph 3 mentioned in Article 4(2)) establishes that "[p]*rovided that the national or company concerned has not submitted the dispute for*

*resolution under sub-paragraph 2.A or B* [i.e., "*pursuant to the competent courts or administrative tribunals of a Party*" or "*applicable, previously agreed dispute settlement procedures*"], *and that ninety days have elapsed from the date on which the dispute arose, the national or company concerned may submit the dispute for settlement by binding arbitration:* [...] *(iii) in accordance with the UNCITRAL Arbitration Rules.*"

106.   Vietnam expressly provided its consent to arbitration under the UNCITRAL Arbitration Rules: "*Each Party hereby consents to the submission of any investment dispute for settlement by binding in accordance with the choice of the national or company under sub-paragraph 3.A(i), (ii), (iii).*"

107.   In the instant case, (1) the dispute "*has not been resolved through consultation and negotiation*" (Article 4(2)), (2) neither of the Claimants has "*submitted the dispute for resolution*" to "*the competent courts or administrative tribunals of the Party in the territory of which the covered investment has made*" or "*in accordance with any applicable, previously agreed dispute-settlement procedures*" (Article 4(3)); and (3) "*ninety days have elapsed from the date on which the dispute arose*" (Article 4(3)).

108.   There can therefore be no dispute that Vietnam has consented to arbitration with the Claimants under the UNCITRAL Rules.

**VI.   PROCEDURAL ISSUES**

109.   Below, the Claimants address the constitution of the Tribunal (**A**), the language of the arbitration (**B**), and the place of arbitration (**C**).

**A.   Constitution of the Arbitral Tribunal**

110.   The Treaty does not specify the number of arbitrators in any arbitration.

111.   Article 5 of the UNCITRAL Rules provides that a tribunal of three arbitrators shall be constituted unless the Parties agree to a sole arbitrator: "*If the parties have not previously agreed on the number of arbitrators (i.e. one or three), and if within fifteen days after the receipt by the respondent of the notice of arbitration the parties have*

*not agreed that there shall be only one arbitrator, three arbitrators shall be appointed.*"

112. According to Article 7, "[i]*f three arbitrators are to be appointed, each party shall appoint one arbitrator.*"

113. The Claimants require a tribunal of three arbitrators and will nominate an arbitrator in due course.

**B.     Language of the Arbitration**

114. The Treaty does not establish the language of arbitration.  Pursuant to Article 17 of the UNCITRAL Rules, the Claimants propose that the language of arbitration be **English**, one of the two official languages of the Treaty and the only language of the Kien Luong Arbitration.

**C.     Place of the Arbitration**

115. The Treaty does not specify the place of arbitration.  Therefore, according to Article 16(1) of the UNCITRAL Arbitration Rules, "*such place shall be determined by the arbitral tribunal, having regard to the circumstances of the arbitration.*"

116. The circumstances of the arbitration demonstrate that **Paris, France** would be the most appropriate place of arbitration.  Paris is the place of arbitration in the Kien Luong Arbitration, from which this arbitration flows.  The Kien Luong Arbitration tribunal found that Paris was an "*appropriate selection*" because, "*in view of the nationalities of the Parties, Paris serves as a neutral seat*" and "*Paris is known to have a supportive legal framework for the conduct of international arbitration.*"[56]  It also "*consider*[ed] *Paris to be an appropriate selection since counsel for Claimants and* [Vietnam] *have law offices in Paris.*"

---

[56]     Procedural Order No. 1 in PCA Case No. 2020-05 dated February 19, 2020, **Exhibit C-19**, para. 7.

**VII.   REQUEST FOR RELIEF**

117.   For the foregoing reasons, the Claimants respectfully request an Award:

    a.   Declaring that Vietnam has breached Articles 2, 3(1), 3(2), and 10 of the Treaty;

    b.   Ordering Vietnam to pay monetary damages in an amount no less than **USD 2 billion** as well as pre-award interest;

    c.   Ordering Vietnam to pay post-award interest on all sums until full payment is received;

    d.   Ordering Vietnam to bear the costs of this proceeding and to reimburse the Claimants' costs and expenses, including attorneys' fees, in an amount to be determined in a later phase of this proceeding by such means as the Tribunal may direct; and

    e.   Ordering any such other relief as the Tribunal may consider just and appropriate in the circumstances.

118.   The Claimants reserve their right to amend their claims and requested relief at any time in the course of the proceedings, and to produce further evidence (whether factual or legal) as may be necessary to complete or supplement the presentation of their claims, if the circumstances of the case so require.

June 23, 2022

Philippe Pinsolle
Stephen Jagusch QC
Alexander G. Leventhal
QUINN EMANUEL URQUHART & SULLIVAN UK LLP

Minh-Tam (Tammy) Tran
TAMMY TRAN LAW ATTORNEYS AT LAW LLP